IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

JULIE A. SU,

   *Acting Secretary of Labor, United States Department of Labor*

VS.

CIVIL ACTION NO.: NO. 3:23-CV-348-M-P

BATTLE FISH NORTH;
MAGNOLIA PROCESSING, INC.;
WILLIAM HOUSTON BATTLE, SR.;
WILLIAM HOUSTON BATTLE, JR.;
THOMAS COOPER BATTLE,

   *Defendants*

### REPLY BRIEF IN SUPPORT OF
### DEFENDANTS' MOTION TO COMPEL DISCOVERY

**NOW INTO COURT**, through undersigned counsel, come Defendants, Battle Fish North; Magnolia Processing, Inc.; William Houston Battle, Sr.; William Houston Battle, Jr.; and Thomas Cooper Battle (collectively, "Defendants"), and respectfully submit this Reply Brief in Support of their Motion to Compel Discovery, and would show the following:

### INTRODUCTION

The Acting Secretary of Labor (the "Acting Secretary") has no good cause to withhold responses to Defendants' written discovery requests. She relies on procedural inaccuracies, misstatements of the law, and inconsistent legal arguments about the government informer's privilege and the deliberative process privilege, but ignores the obvious: (1) she concedes that she is not seeking relief from Defendants' discovery requests based on the deliberative process privilege, and (2) she waived both privileges when she elicited live testimony from three Department of Labor agents concerning the "separate wage investigation" and by disclosing otherwise confidential information in her Initial Disclosures on November 8, 2023.

Privilege is not the seminal issue. The main issue is the Acting Secretary's failure to provide appropriate written discovery responses and to produce documents and knowledgeable witnesses—even after conceding that privilege is not an impediment, while attempting to bolster her causes of action with information she now claims is irrelevant.

Inasmuch as waiver is not legitimately contested, Defendants have demonstrated a compelling need to discover the information the Acting Secretary expressly placed at issue. There is no good cause to deny Defendants' request for relief. The Acting Secretary claims Defendants intend to unmask the identities of confidential informants. But that is not the case. The Acting Secretary conveniently ignores the numerous discovery requests Defendants propounded that do not require the disclosure of witness identities.[1] With respect to the deliberative process privilege, the Acting Secretary focuses exclusively on witness identities, but she does not explain how any of the materials she withheld constitute pre-decisional "opinions and recommendations." *See Nevada Partners Fund, LLC v. U.S.*, No. 3:06-cv-379-HTW-MTP, 2008 WL 2484198, at *4 (S.D. Miss. May 12, 2008) (reaffirming that the deliberative process privilege protects only pre-decisional materials from disclosure and applies to "only opinions and recommendations," and that "factual findings and conclusions are not protected") (internal citations omitted)).

Additionally, the Acting Secretary failed to produce a privilege log that complies with the requirements of Federal Rule of Civil Procedure 26(b)(5)(A). The Acting Secretary's privilege log contains vague descriptions of purportedly privileged material that do not sufficiently "describe the nature of the documents, communications, or tangible things not produced or disclosed" that would "enable [Defendants or the Court] to assess the claim" of privilege.[2] Fed. R. Civ. P. 26(b)(5)(A)(ii).

---

[1] *See* Doc. 53-3; Doc. 54, at p.10-11.
[2] *See* Doc. 53-3.

Allowing the Acting Secretary to withhold relevant, discoverable information would disserve the public interest. The claims at issue concern FLSA interference pursuant to 29 U.S.C. § 211(a) and FLSA retaliation under 29 U.S.C. § 215(a)(3). However, the Acting Secretary relies on witness statements that lend no support to the allegations in her Complaint. The Acting Secretary mischaracterizes Defendants' discovery requests as attempts to gather information about a separate wage investigation. That assertion aims to misdirect the Court from the matter at hand: Defendants do not seek to litigate a "hypothetical" case about wage violations. Rather, Defendants' discovery requests were appropriately tailored to assess the Acting Secretary's claims for unlawful interference and FLSA retaliation. The Acting Secretary simply cannot file suit and and then shield the evidence (or lack thereof) of the claims she asserted. Indeed, relying on unpublished investigative "findings" to support causes of action that are not subject to testing through the discovery process is prohibited by *United States v. Roviaro*. 353 U.S. 53, 59 (1957).

As for depositions, Defendants would suffer prejudice if they are unable to depose witnesses in a meaningful way and without the threat of privilege-based objections that the Acting Secretary has conceded and waived. If the Acting Secretary would have her way, discovery would close without affording Defendants a meaningful opportunity to confront the Wage and Hour investigators who purport to have firsthand knowledge of the Acting Secretary's August 23, 2024 investigation that she claims Defendants unlawfully impeded under 29 U.S.C. § 211(a).

Because the Acting Secretary has not shown good cause for withholding discovery, the Court should compel the Acting Secretary to supplement her written discovery responses and to produce the documents and information requested by Defendants without limitation. The Court should also compel each of the Wage and Hour investigators who have been properly noticed for deposition to appear for depositions in May 2024.

3

# ARGUMENT

I. **The Acting Secretary should answer Defendants' written discovery requests without asserting the government informer's privilege or deliberative process privilege.**

With the exception of information she redacted, the Acting Secretary concedes that she is not asserting privilege with respect to the initial disclosures she served on November 8, 2023.[3] Likewise, the Acting Secretary concedes she does not seek relief from Defendants' discovery requests based on the deliberative process privilege.[4] There is no reason the Acting Secretary cannot produce responsive documents and/or witnesses. The Acting Secretary should supplement her discovery responses, withdraw her objections, and produce responsive documents and witnesses at this time.

II. **Defendants' discovery requests seek relevant information, and the balance of equities weighs in favor of disclosure.**

The Acting Secretary placed the "wage investigation" at issue when she elicited witness testimony during the hearing on the motion for temporary restraining order, and when she published information about the wage investigation (including witness statements and investigative findings) into the public record.[5] Defendants have requested information that is proportional to the needs of the case, as shown by Investigator Espinoza's testimony during the hearing on the motion for temporary restraining order:

> Q: Now I want to talk about **a different part of your investigation** for a moment. You mentioned that **part of the investigation was looking at the housing these workers stayed in.** How do you find out where those housing locations were?

---

[3] Doc. 59, at p.3.
[4] Doc. 60, at p.7.
[5] In deliberately understating the relevance of the wage and hour investigation, the Acting Secretary argues that Defendants seek to "litigate a hypothetical case." Doc. 59, at p.1. If the wage and hour investigation were "hypothetical" as the Acting Secretary contends, then her claims would be nonjusticiable. *See* U.S. Const., Art. III, § 2 (establishing that the court's judicial review authority extends only to real cases and controversies.).

> A: […] [W]hen we told them that we needed to do housing inspections, we asked Cooper to take us to the housing locations. […]
>
> Q: Okay. Did Cooper Battle identify all of the housing locations that Battle Fish workers were staying in?
>
> A: No.
>
> […]
>
> Q: Okay. And how did the conditions in that facility compare to the conditions in the facility that Cooper Battle identified.
>
> MR. DAVIS: **Objection, relevance. The Government has claimed that they're only here on interference.** They already certified housing in February, and they've stipulated they're only here on interference.
>
> THE COURT: What's your response?
>
> MR. MILLER: Your Honor, (inaudible) **we're also explaining why Cooper Battle would hide this information.**
>
> THE COURT: Overruled.[6]

This line of questioning and testimony shows that the wage investigation is both relevant and inextricably intertwined with the Acting Secretary's claims for relief. As explained in Defendants' Memorandum in Support of Motion to Compel, and as evidenced by the Acting Secretary's response to Defendants' relevance objection, the Acting Secretary bases her interference on "findings" from the wage investigation.

When weighing Defendants' need for the requested discovery to prepare for trial with the public interest, the balance of equities militates in favor of disclosure. In *United States Department of Homeland Security*, the Fifth Circuit applied the *Frankenhauser* test to determine whether documents could be withheld based on the law enforcement privilege. Analogous here, among the factors the Court considered were (1) the extent to which disclosure will thwart governmental

---

[6] Doc. 58-1, at 29:31-33:13.

processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the plaintiff's suit is non-frivolous and brought in good faith; (5) whether the information sought is available through other discovery or from other sources; and (6) the importance of the information sought to the plaintiff's case. 459 F.3d at 570; *see also Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C. Cir. 1996) (utilizing the *Frankenhauser* factors). The overarching consideration for each factor is whether the requesting party's need for discovery outweighs the public's interest in protecting the information from disclosure. In this context, the balance of equities weighs in favor of requiring the Acting Secretary to disclose the improperly withheld information and to supplement her written discovery responses.[7] *See* 459 F.3d at 570.

This case is similar to *Roviaro* because a "confidential informant" provided questionable factual accounts that the Acting Secretary relied on when bringing this lawsuit. *See Roviaro v. United States*, 353 U.S. 53, 59 (1957). The Supreme Court determined that disclosure was warranted in that scenario. *Id.* Also similar to *Roviaro*, the Acting Secretary has litigated this case in a way that erodes public trust and confidence because (1) witness accounts do not align with the Acting Secretary's allegations, and (2) the Acting Secretary withheld discovery without lawful basis. *See* 792 F.3d 554. Allowing the Acting Secretary to withhold discoverable information in this context would substantially harm the confidence the American public should have in this important government function.

For example, the Acting Secretary relied on at least ten witnesses to support her claims, but they all failed to specify facts to substantiate an unlawful interference claim under 29 U.S.C.

---

[7] *See generally* Doc. 48-1.

§ 211(a) or a retaliation claim under 29 U.S.C. § 215(a)(3).[8] Critically, the witness account that prompted the Acting Secretary's investigation was provided by an employee who was charged with assaulting the co-worker whom he claimed engaged in unlawful retaliation before August 23, 2023. Defendants are entitled to exhaust discovery to test the credibility of the witnesses, to guard against unfair surprise, and to position themselves to resolve this unsupported claim.

As this evidence relates to the *Frankenhauser* factors, (1) disclosure will not thwart the Acting Secretary's "wage investigation" by discouraging citizens from giving information because the Acting Secretary voluntarily elicited testimony about the examination in open court and disclosed the information Defendants would probe by way of written discovery and depositions; (2) given the various accounts of the ten witnesses, none of which supported interference or retaliation associated with the August 23, 2023, "wage investigation," the Acting Secretary's suit is demonstrably frivolous; and (3) the information Defendants seek is **not** available through other sources.[9] *See Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C. Cir. 1996) (applying the *Frankenhauser* factors).

### III. The Acting Secretary waived privilege.

The assertion of privilege is waived when (as here) the party holding the privilege discloses the privileged information. *See Roviaro*, 353 U.S. at 60 (holding the informer's privilege ceases to apply "once the identity of the informer has been disclosed to those who would have cause to resent the communication"); *Sherman v. U.S. Dept. of Army*, 244 F.3d 357, 363 n.9 (5th Cir. 2001)

---

[8] *See generally id.*

[9] The Acting Secretary's position that the Court's Order does not "prohibit Defendants from speaking with their own employees" is not asserted in good faith. *See* Doc. 59, at p.3. The Acting Secretary has asserted claims for retaliation and unlawful interference pursuant to 29 U.S.C. § 215(a)(3). Thus, logical reasoning dictates that Defendants would not speak with those employees in the interest of maintaining compliance with the law. Moreover, the Acting Secretary's assertion plainly demonstrates that she has no rational belief that any of Defendants' employees have "risked their livelihood to provide information to the Wage and Hour Division," have faced threats of retaliation, or have been retaliated against.

(noting that the government waives the deliberative process privilege when it discloses the purportedly privileged documents to a non-federal third party). Neither privilege applies in this case.

### 1. *The Acting Secretary waived the deliberative process privilege.*

"[W]hen an agency makes a voluntary, authorized disclosure of public information, whether the disclosure involved the actual release of documents or some sort of 'off the record' statement or public reading, the relevant agency 'waives any claim that the information is exempt from disclosure under the deliberat[ive] process privilege.'" *Sherman v. U.S. Dept. of Army*, 244 F.3d 357, 363 n.9 (5th Cir. 2001) (quoted case omitted)); *Mead Data Central, Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 253 (D.C. Cir. 1977) ("If the information has been or is later shared with third parties, the privilege does not apply."). To maintain the privilege, "[t]he government would have to show that the information was supplied by the [government] with the expectation of secrecy and, most important here, 'was not known or disclosed to *any* third party.'" *Shell Oil Co.*, 772 F. Supp. at 207 (quoting 566 F.2d at 253). The Acting Secretary cannot satisfy this burden because she placed the "deliberative process" of the "wage investigation" and the Department of Justice investigation at issue by (1) eliciting testimony about the investigation during the hearing on her motion for temporary restraining order and (2) voluntarily disclosing the documents.

The Acting Secretary concedes that she is not asserting the deliberative process privilege,[10] and that concession accords with the fact that she waived the deliberative process privilege by eliciting testimony from three Department of Labor agents about the Wage and Hour investigation at issue.[11] The Acting Secretary specifically testified about her role in the investigation and investigative findings and confirmed that the investigation is "ongoing," even though she refused

---

[10] Doc. 60, at p.7.
[11] *See* Doc. 58-1 ("Hearing Transcript").

8

PD.44927471.2

to answer Defendants' discovery request about the status of the investigation based on the deliberative process privilege.[12] Defendants also cross-examined the three agents about the respective roles Investigators Kristina Espinoza and Edward Houston played in the investigation and the scope of the Wage and Hour Division's "investigative plan."

Additionally, the Acting Secretary voluntarily disclosed information concerning the WHD and Department of Justice investigations prior to receiving *any* discovery requests from Defendants. Those documents describe a Department of Justice investigation against Defendants, as well as the "wage investigation" against Defendants that was initiated on or about October 27, 2022.[13] Similarly, the investigative documents produced by the Acting Secretary expressly refer to the Acting Secretary's wage investigation. Specifically, the Acting Secretary's initial disclosures identify an informant who "alleges the [Employer] requires him to perform job duties that aren't specified in his Job Order" and that he "stated his job is that of a mechanic, but just yesterday (10/26/2022) the [Employer] required him to pour concrete."[14]

Unlike the "clawback" letter the Acting Secretary issued regarding the disclosure of a government informer's identity, the Acting Secretary made no effort to "clawback" information she disclosed regarding the "wage investigation" and Department of Justice investigations she now claims are protected from disclosure. These conflicting positions dispel any notion that this case is presented on a genuine issue or that disclosure should be prohibited. Not only does the Acting

---

[12] Doc. 58-1, at pp. 34-37.

[13] *See* Doc. 48-1, at p.9 (disclosing the Acting Secretary's receipt of information from Erik Lang, Senior Trial Atty. For the Immigrant and Employee Rights Section (IER) of DOJ, namely that the "Civil Rights Division informed ADD Bell on 10/28/2022 via tel. that an IER investigation is possibly in the works against the AGER" and referring to alleged wage and hour violations).

[14]*See* Doc. 48-1, at p.9. Likewise, the Acting Secretary's argument that the Department of Justice investigation is irrelevant to this lawsuit is contradicted by the Acting Secretary's disclosure of documents referencing the investigation. *See id.* Not only does the Acting Secretary's disclosure of this information refute her assertion of the privilege and her relevance-based objections, this information also confirms that the Acting Secretary's representation that the WHD has no information concerning the DOJ investigation, as shared during a discovery conference between the parties' counsel in January 2024, was false.

9

Secretary defend her disclosure of this information by arguing that it is privileged, she tacitly denies disclosing information about the Department of Justice investigation in a one-sentence footnote in her Motion for Protective Order (and notably, she did not "clawback" any of this broad information).

### 2. *The Acting Secretary waived the government informer's privilege.*

When responding to Defendants' discovery requests, the Acting Secretary referred Defendants to her Initial Disclosures.[15] Although the Acting Secretary applied certain redactions[16] to select portions of the ten interviews with alleged "informants," the Acting Secretary did not categorically conceal the names, addresses, ages, dates of interview and telephone numbers of individuals she interrogated in her "wage investigation."[17] The Acting Secretary concedes that her document production identified the "person submitting information" and that she did not intend to shield this disclosure.[18] Those types of disclosures appear throughout the Acting Secretary's production.[19]

Over three months later, the Acting Secretary forwarded a clawback letter to Defendants on February 16, 2024, seeking to retract her disclosure of "inadvertently produced page (Bates

---

[15] *See* Doc. 48-1 at pp. 7-64.

[16] Doc. 48-1 at pp. 447-504 was too heavily redacted. *Roviaro*, a case in which the Court actually required disclosure, instructed that the Government's privilege is to withhold from disclosure **the identity of persons who furnish information of violations of law to officers charged with enforcement of that law**. *See Roviaro v. United States*, 353 U.S. 53, 59 (1957). A review of Doc. 48-1 (pp. 7-64) shows that far more information than the identity of persons was redacted from the papers the Acting Secretary produced. For example, the Acting Secretary routinely redacted the date and place of interview. That data would not tend to disclose the identity of persons who furnished information and the Acting Secretary has not shown good cause why the disclosure should be limited. The Acting Secretary should be ordered to re-produce Doc. 48-1 at pp. 7-64 with redactions that are not overly broad.

[17] *See* Doc. 48-1 at pp. 7-64.

[18] *Id.* at p.7; Doc. 59, at p.3 (explaining that the Acting Secretary "has not asserted the informer's privilege over names shared during the initial disclosures.").

[19] Doc. 48-1, at p.8 (disclosing identify of alleged informant who discussed job duties); *Id.* at p.33 (disclosing the identity, age, telephone number and address of an employee interviewed on August 24, 2023); *Id.* at p.53 (disclosing the identity of eight employees who allegedly left after "Wage and Hour came two weeks ago."); *Id.* at p.62 (disclosing the name of an employee who allegedly "feels intimidated.").

numbered WHD 00041)."[20] Notably, the February 16, 2024, correspondence made no mention of the numerous other disclosures of allegedly confidential information the Acting Secretary made on November 8, 2023, as identified *in seriatim* above.[21] The Acting Secretary's position that she made diligent efforts to preserve the privilege is unsupportable.

### IV. The Acting Secretary's privilege log does not comply with Fed. R. Civ. P. 26(b)(5)(A).

The Acting Secretary's privilege log merely contains generic descriptions of the withheld documents, such as "Personal Interview Statement."[22] Notably absent from the privilege log is a particularized description of specific documents or communications that are protected from disclosure. Although the privilege log contains a column entitled "Information Deleted – Full or Partial Redaction," the inputs to that column only indicate whether the documents were redacted in full or in part and whether the Acting Secretary withheld the document from production in its entirety.[23] Further compounding the insufficiency of the Acting Secretary's efforts to describe the allegedly privileged documents with particularity, the privilege log references "[u]nknown" (*i.e.* non-existent) documents "within the file for the ongoing H-2A/FLSA Investigation"[24] that the Acting Secretary withheld based, in part, on the Acting Secretary's categorical assertion of the deliberative process privilege.[25]

---

[20] *Id.* (emphasis supplied).
[21] *See* Doc. 48-1 at pp.7-64.
[22] *See* Doc. 53-3.
[23] *Id.*
[24] *Id.* at p.3.
[25] At minimum, the Acting Secretary should be required to supplement the privilege log to comply with Fed. R. Civ. P. 26(b)(5)(A)(ii), and the purportedly privileged documents and/or communications should be subject to an *in camera* inspection, which would enable the Court to reliably determine whether any of the withheld documents or communications are truly protected from disclosure. *See, e.g.*, *In re U.S. Homeland Sec.*, 459 F.3d at 570-71; *Pinkerton*, 2005 WL 8158345, at *2 (determining that documents withheld on basis of deliberative process privilege did not fall within the scope of the privilege after conducting an *in camera* inspection of the documents); *Nevada Partners Fund, LLC*, 2008 WL 2484198, at *1; *Highland Capital Management*, 408 F. Supp. at 815.

PD.44927471.2

Underscoring the need for a sufficiently descriptive privilege log is the Acting Secretary's concession that she "has not asserted the informer's privilege over names shared during the initial disclosures."[26] On its face, this assertion conflicts with the position the Acting Secretary took in her Motion for Protective Order to Limit Discovery, and the Acting Secretary should be judicially estopped from asserting a contradictory position at this stage. More fundamentally, the privilege log does not describe the withheld information with sufficient particularity to "enable [the Court and Defendants] to assess the claim" of privilege. Fed. R. Civ. P. 26(b)(5)(A)(ii). Neither the Court nor Defendants can rely on the privilege log to delineate what information the Acting Secretary believes to be privileged from non-privileged information.

### V. All depositions should proceed in May 2024 without objection.

The Acting Secretary has failed to show why the nine depositions should not proceed without objection.[27] Despite engaging in discovery conferences with Defendants for months, the Acting Secretary did not disclose that she planned to seek a protective order to assert privilege objections during the depositions until she was forced to admit this plan during the parties' conference with the Court on February 29, 2024. Now, the Acting Secretary concedes that she is not asserting privilege with respect to the information contained in her Initial Disclosures. Moreover, she waived privilege through her Initial Disclosures and by eliciting testimony about

---

[26] Doc. 59, at p.3.

[27] *See* Doc. 53-7. The parties participated in Rule 37 conferences on January 3, 2024, and January 25, 2024. In conjunction with those conferences, Defendants proposed that depositions take place from January 23, 2024 to January 25, 2024, and asked the Secretary to "[p]lease confirm whether **the WHI witnesses identified in Plaintiff's Initial Disclosures** are available on any of the proposed dates." Doc. 53-1 (emphasis added). The Acting Secretary identified ten Wage and Hour Investigators in her Initial Disclosures. *See* Doc. 48-1, at pp. 1-3. After two Rule 37 conferences with the Acting Secretary's counsel, Defendants were constrained to unilaterally notice six of those depositions because the Acting Secretary never provided dates. Thus, the Acting Secretary's assertion that "Defendants never asked for dates for six of those witnesses" is untrue and expressly contradicted by the record. *See* Doc. 53-1, at p. 2-3 ("On January 3, 2024, you indicated by e-mail that you would provide the Wage and Hour Investigators' availability for deposition. We would propose noticing depositions on […] January 23, 2024; January 24, 2024; and January 25, 2024.

the "wage investigation." This means the Acting Secretary is judicially estopped from asserting those privilege-based objections with respect to any matter at issue in her initial disclosures or that she elicited during the hearing on the motion for temporary restraining order.

Defendants have not been able to examine the nine witnesses because of the Acting Secretary's dilatory conduct.[28] Although the Court extended the discovery deadline to June 17, 2024, Defendants respectfully submit that the additional time does not cure the prejudice at issue. Defendants' counsel are set for trial in a separate matter with the Department of Labor on June 11, 2024.[29] Accordingly, the time period between June 1, 2024 and June 13, 2024 cannot reasonably be allocated to work in this case. This, too, is a reason that it is necessary to depose the nine witnesses before June 1, 2024. To have fair access to all witnesses, Defendants pray that the Court would fashion an order compelling those witnesses to appear on agreed dates between May 1, 2024 and May 16, 2024, or between May 29, 2024 and May 31, 2024.

## CONCLUSION

For each of the foregoing reasons, Defendants respectfully request that the Court compel the Acting Secretary to supplement her written discovery responses and to produce all responsive

---

[28] The Acting Secretary's lawyers and the Assistant District Director (Vilma Bell) met with Investigator Espinoza at the hearing on the motion for temporary restraining order in September 2023. The Acting Secretary cannot deny actual knowledge of the conditions giving rise to Investigator Espinoza's leave of absence from work. The Acting Secretary listed Investigator Espinoza as a witness in her initial disclosures on November 8, 2023, and made no mention of her unavailability for reasons then-known to the Acting Secretary. Then, when agreeing to dates at the case management conference, the Acting Secretary did not object to deadlines and did not advise the Court of Investigator Espinoza's unavailability for reasons then-known. Rather, the Acting Secretary did not announce that Investigator Espinoza was unavailable until Defendants persisted in requesting available dates for her deposition in January 2024. Since belatedly announcing unavailability, the Acting Secretary has advised that Investigator Espinoza will not return from leave until some unspecified time in June 2024. After agreeing to dates and accepting notices for other witnesses, the Acting Secretary decided she would seek relief from the Court to delay those depositions from proceeding. At present, there are only 77 days left to complete discovery, and that time must be allocated between nine witnesses who live in diverse geographic locations. And it must also account for supplemental responses to be provided. To ensure Defendants are not unduly prejudiced, the nine depositions would need to begin with Investigator Espinoza, who demonstrably has the most extensive knowledge about the Acting Secretary's claims. For this reason, deposing Investigator Espinoza first is proportional to the needs of the case as contemplated under Fed. R. Civ. P. 26(b).
[29] **Ex. "H" ("Order Continuing Hearing", OALJ Case No. 2023-TAE-00011/WHD Case No. 1944037).**

information in the Acting Secretary's possession, and to compel the nine witnesses who have been noticed for deposition to appear for depositions in May 2024, beginning with Investigator Espinoza.

This, the 2nd day of April, 2024.

Respectfully submitted,

*/s/ Marcellus D. Chamberlain*
MARCELLUS D. CHAMBERLAIN (MB #105672)
BRANDON E. DAVIS (*Admitted Pro Hac Vice*)
CAROLINE PERLIS (*Admitted Pro Hac Vice*)
PHELPS DUNBAR LLP
4270 I-55 North
Jackson, MS 39211
Telephone: (601) 352-2300
Facsimile: (601) 352-9777
Email: marcellus.chamberlain@phelps.com
brandon.davis@phelps.com
caroline.perlis@phelps.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of April, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record/parties in this proceeding.

*/s/ Marcellus D. Chamberlain*
MARCELLUS D. CHAMBERLAIN